The clerk, call the next case please. Case number 313-0827, Jimena Calvarez-Abilene v. Stephen Rancor v. Pablo Lopez Benitez Appellant by Jamie Scheiner  Good morning. Chief Justice, may it please the Court, Counsel. My name is Jamie Scheiner and I represent the appellant and defendant in this case, Mr. Pablo Lopez Benitez. Unless this Court would like a brief recitation of the facts, I'd like to move directly to my argument. In my time before the Court, Judge, if I could pause, I'd like to reserve three minutes for rebuttal. Thank you. In my time before the Court, I'll address the central issue in this case, which is that the trial court abused its discretion when it failed to apply the warrant or court factors and improperly admitted never-before-seen evidence to the substantial detriment of Mr. Pablo Lopez Benitez. And these would be the x-rays? The x-ray films. Well, let me ask you this. When this evidence was offered, it says, the Court says, they offered exhibits 18, 19, and 20. 18, 19, and 20, the x-rays, the bills, the medical records. 18 is the medical records, 19 is the x-rays, 20 is the component of the bill, Dr. Doniger. No objection to 18 and 19. So you didn't object to the admission of the x-rays? Correct, Your Honor. So how could the Court err? The cases cited by the appellant in our appellant's brief are still good statements of law and stand for the proposition that a motion in limine does properly preserve an error on appeal. At that point, the testimony that Justice Smith is referring to that's been cited by appellee in their reply brief, at that point an objection would have been merely duplicative. I would ask this Court not to follow the other cases that have been cited by the appellee and to instead follow the still proper statements of law that are cited by appellant in appellant's brief. So all you have to do is just do a motion in limine and that's it? Correct. You don't have to do anything at trial? Correct. Because as the record indicates, the motions in limine were argued at length on both day one and day two of trial, and I think that properly preserves the error on appeal. I'd ask this Court to allow this case to be decided on its merits and not on its procedural technicality because this is not a novel issue, it's not a unique issue. It's an issue that arises time and time again in the context of personal injury litigation in particular. We as the trial attorneys who try these personal injury cases that deal with voluminous medical records, we have only this appellate process to obtain guidance as to how we are meant to conduct ourselves during the process of discovery and at trial, and we need this Court's clarification and guidance on this issue because this issue is a common issue. Just give me a summary of this common issue. In essence, Judge, this is about leveling the playing field. This is about balancing the burdens of discovery between both parties to promote and reinforce the values of fairness and equality and discourage gamesmanship, which is the very foundation that underlies our current rules of discovery. Well, there was gamesmanship. I've tried a few of these cases myself and there was gamesmanship going on on both sides. You even stated in the record that you made a concerted decision at first not to depose the doctor and then later changed your mind and then said, yeah, I want to take the deposition. So, I mean, under the Supreme Court rules, if you think your opponent is hiding a ball or something, under Rule 201, you can file a motion to compel, but you've got to say you worked it out. You never filed a motion to compel anybody to produce these x-rays or anything else, did you? I did not file a motion to compel, but I think there's an important distinction to be made there and perhaps Justice Smith is referring to the argument on motion to eliminate the trial court. The trial court had made the decision that the defendant allegedly knew of the x-rays, essentially finding that there was no surprise to the defendant. I maintain before this court that the defendant did not know of the x-rays. Yes, there was gamesmanship in making the strategic decision not to depose Dr. DeLaguer. First and foremost, a defendant only has certain options available to it in obtaining medical discovery. To send a request to produce to the plaintiff, which was done and no records were produced. To subpoena the records directly from the provider, which were done and no x-rays were produced. And then to take the deposition of Dr. DeLaguer. But most importantly, the defendant only has the subpoena responses, especially in this case, upon which to make any further decisions regarding discovery. When the plaintiff does not obtain plaintiff's own medical records and does not disclose plaintiff's own medical records, it has the practical effect of saying to the defendant, as the disclosures did state, that this doctor, we anticipate that this doctor is going to testify to the information contained in the medical record. It's now on you, defendant, to go and subpoena those records and see what's there. The defendant did what the defendant was obligated to do at that point, go and subpoena the records, and the records contained 139 office visits. Not only were no x-rays produced or no phone calls made to say, hey, there's x-rays in these files, do you want these x-rays? There wasn't an indication whatsoever in the record, and I did... Except for deposition. Except for deposition, and I will address that next, Justice. There's no indication, there was nothing to put the defendant on notice that Dr. DeLaguer had taken x-rays. So that moves us to the plaintiff's discovery deposition. It was the second thing that... What was the scope of your subpoena? The subpoena, there were four subpoenas, but I think it's more... I think, I'd like to limit it to the first subpoena, though I'd be happy to address all four. And what kind of subpoena is it? It was a subpoena ducis tecum, and it asked for any and all records, including but not limited to, and then it has a laundry list of things that we're looking for. The trial court took issue with the fact that in that laundry list, we asked for x-ray reports and not x-ray films themselves. I'd say that... My argument is that that doesn't matter. The first line in the x-rays... Excuse me, the first role in responding to a subpoena ducis tecum is that we asked for any and all records of the plaintiff. Any and all records were not produced. Apparently, this particular doctor's practice was to take the films and put them wherever he puts them in his practice, but the important part of this is that he made no notation whatever in his records. Not that an x-ray was ordered. Not even the word x-ray appears in his records. There was nothing contained in those subpoena responses to put the defendant on notice that Dr. DeLaguerre was withholding x-rays. That brings us to the plaintiff's discovery deposition testimony. She did say in her discovery deposition that she believed she had x-rays by Dr. DeLaguerre. As a side note, the plaintiff did have some x-rays down in the emergency room that are not at issue here. Secondly, in the context of personal injury litigation... So when were you aware that there were x-rays filmed? When was I aware of the actual films? During the hearing on motion limiting. And even at that time, I would argue it was still unclear whether or not Dr. DeLaguerre was going to show up on the following day with x-ray films, but that was the first time that I became honestly aware that there were x-ray films that were going to be used as plaintiff's case-in-chief. So to get back to the plaintiff's discovery deposition, the plaintiff did say that she believed she had x-rays taken by Dr. DeLaguerre. In the personal injury context, it's not... And when did you take that deposition? January of 2003. Before the motion eliminated? Before the motion eliminated, yes. So you knew there was the existence of x-rays, she told you? I would argue that I did not know that there was the existence of x-rays. And the reason why, Justice Holdridge, is because first and foremost in the context of personal injury litigation, plaintiffs get their medical treatment wrong all the time. It's understandable given the fact that the treatment is usually rendered years before we get to the point of the discovery deposition. By virtue of the plaintiff stating, I think I had x-rays taken by Dr. DeLaguerre, that arguably at that point put the defendant on notice. But what are the defendant's options at that point? The options are to subpoena the records. The records had been subpoenaed. The defendant then goes to the subpoena responses, which don't contain any mention of an x-ray whatsoever. Not even the word x-ray. Is DeLaguerre a chiropractor? He is. And you tried these defense cases, right? Have you ever known a chiropractor not to take a bunch of x-rays? Ever? I don't exactly know how to answer that, Judge. Well, in your experience... In my experience in these cases, I would say this was the first personal injury suit that I had defended where the only F-2 witness being called was a chiropractor. So given what I know now, I do understand this. Given what I knew then, I did not believe that to be the case. I thought that at the very least... Is a film a record? Yes. I would say that it is. You'd say it is, but is it? Yes. It is a record of the medical treatment. And if you'll look at the subpoena responses, I think that goes to these actual office visits. It's kind of a format office visit record that Dr. DeLaguerre uses. There are x's where you can simply checkmark something to let them know that something's been done. And I think there is an x-ray portion where he could have simply just checked it. That one might have been enough to put the defendant on notice that an x-ray was taken. But there was nothing contained in those records. But you did have a long time before the actual inter-parties say that there were x-rays. I had a 2-13 disclosure. That was the only document produced responsive to discovery that mentioned the word x-ray. It was a 2-13 disclosure. It contained Dr. DeLaguerre, the emergency room physician, and I think a third physician. The disclosure was identical from doctor to doctor to doctor. And it said this doctor will testify to any and all diagnostic imaging including x-rays. And I think that that's important because this is part and parcel of the conduct or the pattern of behavior that arises in a personal injury suit, is that oftentimes for strategic reasons or to save costs, a plaintiff's attorney decides not to go and obtain their own medical records. Certainly they have the choice to do that. But when a plaintiff responds to discovery and provides no medical records in response to a 2-14 request to produce and simultaneously gives 2-13 disclosures that are identical from doctor to doctor and say this doctor is going to testify to any and everything that's in their records, that puts the burden squarely on the defendant to go and obtain that medical evidence for the plaintiff. That's where the discovery became slightly one-sided. But it became compounded when Dr. DeLaguerre didn't properly comply with the subpoena. And then ultimately the trial court shifted the burden to the defendant and made the defendant pay the repercussion of those x-rays not being produced. So in essence, the plaintiff got to take advantage of the fact that Dr. DeLaguerre didn't produce the x-rays. That made it one-sided. That's where the trial court erred because it didn't apply the totality of the warrant or court factors. I maintain that the reason why this is so important is because there are certain policies that underlie our process of litigation. First and foremost is that we as counsel have an obligation to fully investigate our claims before we file them. We have an obligation to participate in discovery in good faith. We have an obligation not to try to unfairly surprise the other side. Those are all policies that underlie our current rules of discovery. And then finally, to put the nail in the coffin, the plaintiff is the only person under our laws and our doctrines that has the opportunity and access to Dr. DeLaguerre. And in this case, at the time that the defendant then finally moved to have leave to depose Dr. DeLaguerre, a step which would have clarified this whole process, the plaintiff objected to that. The plaintiff at some point knew they were going to use Dr. DeLaguerre and these x-ray films and opinion testimony regarding these x-ray films at length and did nothing to try to rectify that error, when at that time the plaintiff was the only one who had the opportunity and access to do so. Let me ask you, because I can't understand a defendant not deposing the one medical expert the plaintiff discloses as their trial witness. But, and then when you came back in and asked to get the deposition, of course to get a discovery deposition you have to have a court order unless the medical witness will agree, but then you just abandon it. The denial of the request for the deposition, you just abandon that argument. Would you do that? Well, at that time the decision not to depose Dr. DeLaguerre was made upon the responses to the subpoena. And that's all a defendant has to go on to to make a decision. If you look at the responses to the subpoena, for 139 visits, roughly 18 months of treatment, that this chiropractic doctor rendered, the same three things were copied throughout the record. There was no indication the doctor had did anything more than that. And it appears like you have a follow-up question, Justice. I'm talking about then, but ultimately you made the decision, okay, change your mind, trial's not set, we want the deposition. But then you didn't raise that issue in the, the issue you raised on appeal here, one of them court abuse, ever discretion in denying your request to depose the witness. But then you didn't raise it in the post-trial motion. I would argue that we addressed the issue in the post-trial motion. We did not devote any lengthy argument to it, mainly because I, given the nature of the arguments I'd had with trial court, I chose to focus my argument on what I thought had been my stronger points in that brief. We did raise the issue that we were denied leave, but I think how this court can reach a remand in this case would be to apply the warrant or court factors, which is what the trial court should have done. And that, the request for leave to depose Dr. DeLogger goes to the fifth factor, which was the diligence of the adverse party. Defendant subpoenaed the records, defendant tried to depose Dr. DeLogger, defendant brought the motion limine. The sixth factor, the good faith of the party seeking to use the evidence or call the witness, that's what's lacking in this case, and that's what was never reached by the trial court. In this particular case, the plaintiff had the opportunity and access to Dr. DeLogger, the plaintiff admitted during arguments and motion eliminated, the plaintiff had only the subpoena responses that the defendant had. Those were the only medical records plaintiff's counsel ever sought. Plaintiff was aware that Dr. DeLogger was withholding x-rays and ultimately took advantage of that fact to the detriment of Mr. Pablo Lopez Benitez. But your entire argument in your post-trial motion about the denial of your request to depose the physician was a footnote as opposed to pointing out, look, the trial court, you've committed reversible error by denying me my right to depose this witness at a time when no trial had been set. Now who's going to be delayed? And that's reversible. All you did was just mention that she denied it in a footnote. That's not an argument. I would disagree. I think it's an issue that was properly raised. No at-length argument was devoted to it in the post-trial motion. However, regardless of whether or not that was raised in the post-trial, it goes straight to the warrant or court factors, and I think the warrant or court factors would allow this court to reverse and remand this trial. If for nothing else, the trial on the damages with the instruction to exclude the x-rays and opinion testimony specifically regarding the x-rays. Thank you. Any other questions? Thank you. Mr. Brandenburg, good morning. Steven Brandenburg for the appellee, Amanda Calabresi. The first issue I wanted to address with the court is the issue of waiver. Now, the cases cited by the defendant are not good law. The current law on the issue of waiver clearly supports a finding that the defendant waived any argument regarding admission of the x-rays or opinions related to said x-rays. From the time that Dr. Dallagher got on the stand, which is appendix page 305, through his entire direct, the first objection was nearly 40 pages in, and that related to when he was going to provide an opinion regarding disability. The entire time that he was testifying regarding x-rays, there was no objection. In fact, when Dr. Dallagher was on the stand, and for the first time he wanted to actually show the jury the x-rays and get down and stand before the jury and point out what the x-rays show, he said, Mr. Connelly said, if I may just move the box, Your Honor. The court said, sure. The witness said, do I have permission to stand again? The court said, no objection to him stepping down. Defense counsel stated, no judge. At that point, defense counsel could have objected and said, no, I don't want the x-rays to be shown to the jury. I object to their use. They weren't disclosed. The jury should not be seen. There was no objection. Dr. Dallagher continued with his testimony without any objections being made during the entire time that x-rays were being discussed. So you're saying that the law is, emotion eliminate is not sufficient. Right. The Illinois Supreme Court in Simmons v. Garson's 198L2D541 on page 569 has stated, the denial of emotion eliminate does not in itself preserve an objection to a disputed evidence that is introduced later at trial. When emotion eliminate is denied, a contemporaneous objection to the evidence at the time it is offered is required to preserve the issue for review. This was also explained in the Illinois Supreme Court, by the Illinois Supreme Court, in Illinois State Toll Highway Authority v. Heritage Standard Bank and Trust Company, 163L2D498 on page 502. And this was a 1994 case. The Simmons case was a 2002 case. In civil cases such as this, the law is well established that the denial of emotion eliminate does not preserve an objection to disputed evidence later introduced at trial. The moving party remains obligated to object contemporaneously when the evidence is offered at trial. While there is not always a need to repeat the objection each time similar evidence is presented following denial of emotion eliminate, one must nonetheless object the first time the evidence is introduced. Absent the requisite objection, the right to raise the issue on appeal is waived. There was no objection the first time this evidence was introduced. What's the policy behind that? The policy behind that is so once the judge actually hears the evidence that's being put before the court in front of the jury, the judge can make a decision that makes sense so you don't have to try the whole case again. In this case, that could have been the judge saying, you know what, I'll let him testify about the x-rays because it was disclosed that he would provide testimony about the x-rays, but he can't show the jury the actual x-rays. It allows the judge to take control of her courtroom and make decisions that prevent having to retry a case. Or change his mind. Right. Right. Was the trial attorney with you? No, I was not. The trial attorney was Mr. Cameli. In your firm? Yes. Okay. Do you know why the x-rays were not produced? Well, the x-rays were never in the possession of Mr. Cameli. What happened was- Did Mr. Cameli know the x-rays existed? He disclosed that Dr. Dallager had x-rays. Everybody knew the- well, getting into that issue before- if we're going away from the issue of waiver, the issue of the x-rays. The x-rays were disclosed first when F-2 disclosures were made. And this isn't a case where 15 different treaters were disclosed. Mr. Cameli disclosed three potential treaters who could testify at trial. The emergency room physician, a paramedic potentially, and then Dr. Dallager, the chiropractor, who treated Ms. Calabresi over a period of one and a half years, and had the vast majority of medical bills that were claimed in the case. Approximately 14,000 out of the 20,000 that were placed before the jury. When he disclosed the witness at that time, he disclosed, Dr. Dallager will testify concerning his interpretation of the various diagnostic studies which have been administered to the plaintiff, including x-rays and any other diagnostic studies which were consistent with the plaintiff's injuries and complaints. So part of that initial F-2 disclosure included a disclosure of the x-rays. It was after that that the defense counsel sent subpoenas through record copy service for medical records. Now, those subpoenas did not specifically request x-rays. And what they requested were any and all clinical or doctor's records, notes, memoranda, medical reports, x-ray reports, index cards, history notes, and records, medical bills, and any and all other records and reports in the possession or control relating to the examination and treatment of Amanda. Including but not limited to charts, notes, nurse's notes, lab reports, correspondence, and memoranda. There was no specific request for the actual x-ray films. And that's very common in these cases because x-ray films are often expensive to reproduce and parties don't always want those. So you know when you're practicing, if you want those, you need to tell record copy services, I want a specific copy of the films because there will be an additional charge. And even more in support of that, the cover page provided by record copy services with the subpoenas that were sent out said please call before duplicating the x-rays. That's because in most cases when records are requested by parties in these types of cases, they don't always request the x-rays and the actual films. Because unless they're having an expert look at the films and provide opinion on the films, they don't want to pay for the cost of reproducing them, both plaintiffs and defendants. Well, I've asked you this question. Is a record the same as an x-ray film? Well, in this case, what they made, they made this broad request for records and then they put including but not limited to. And the types of things being requested certainly did not include films and they asked for x-ray reports. But that's not limited to me. Well, I understand that, but we were not the party responding to that subpoena. Well, we're supposed to be lawyers using language with some precision. Is a record the same as an x-ray film? And how difficult is it to delineate that? Well, records I think is an imprecise word. And while records could include films, the specific use of the word records when sending a subpoena to a doctor's office that's being answered by administrative staff, unless there's a specific request for films you have to assume is counsel, you're not going to get those films unless you pay for them or make a specific request for those. Now, in this case, there wasn't a specific request for films and these same subpoenas were also sent to the ER and the ER did not produce their films either to the defense. And the defense never went out and made a specific request or brought those films in at trial, never had their expert review them. So what happened was these subpoenas were sent out, they got a full and complete copy of the records from Dr. Gallinger excluding reproductions of the films. Now, she said there's no reference to x-rays. There was a bill for x-rays being done in the case. And in fact, their expert, Dr. Rousseau, one of his opinions related to the fact that the records were insufficient to support doing an x-ray and that he doesn't do x-rays in his practice. So he was able to opine on these x-rays at his deposition, but they claimed they had no knowledge of the x-rays. Now, after this subpoena was responded to and a copy of the records were provided, at that point the defense took the deposition of the plaintiff, at which point she testified that yes, he took x-rays. Now, if they wanted these x-rays and they wanted their expert, Dr. Rousseau, to look at the x-rays before providing his opinions and providing his deposition, they could have, one, sent a subpoena specifically requesting x-rays and you'll note they never sent a subpoena with really any language different than what I just read to you except for they excluded older records. They got updated records. And they never made a call to plaintiff's counsel. They never sent a letter to plaintiff's counsel saying, hey, do you have a copy of x-rays? Do you have x-rays? Do you know if they exist? There wasn't anything specific. Well, that was basically the opinion of the trial judge, right? Correct. Now, in January of 2013, it was at that point that the judge said, do you want to take any F-2 depositions? Do you want to take any treaters' depositions? And they made a tactical decision not to take those depositions and then several months later to disclose their own F-3 witness, Dr. Rousseau. Now, it's certainly within the discretion of the trial court to control the pace of discovery and the manner of discovery in her courtroom, being that she said if you want to do F-2 deaths, you need to do those before we get to retained expert disclosures. They chose not to do that. They then disclosed their expert, the depositions taken, and they changed their mind. And it's not like they didn't know what their own retained expert was going to testify to or what information he wanted prior to his deposition. They could have talked to him before they ever made the disclosure and requested, hey, before we disclose our expert and go through the deposition, we want to take the deposition of Dr. Gallinger. But they didn't do that. They waited until approximately a week after the deposition of their own retained expert to decide, hey, now we want the deposition of Dr. Gallinger. And the court, within its discretion, said, I don't want to do that. That's not the way we pace things in this courtroom. If you want to take treater deaths, you do it at the time that I asked you to. You agreed to waive it. I'm going to hold you to that. There hasn't been any significant change in the case that wasn't within your control. I'm not going to allow you just to wait and see what happens when your expert is released. Let me ask you this. Was that issue preserved? What's your position on whether the ---- Well, it wasn't raised significantly in the post-trial motion, so it would not have been preserved. Well, you're saying you need more than that. Didn't you say you didn't have an objection? Well, that relates to the handling of the case. In the case, you can't object to the lack of taking the deposition at trial. So when it comes to issues of evidence in the case, you have to object when that evidence is submitted to the court in trial. When it comes to an issue of the handling of a discovery issue prior to trial, that issue you would have to preserve through a post-trial motion in which the issue is specifically addressed, which it was not. It was handled in a footnote as a minor issue and was not specifically addressed by the court. But it's the same standard as the use of discretion. It's an issue of discretion. It's the same standard on both. It's the same standard on both, an issue of discretion. Why is it not an issue of discretion? Discovery hadn't closed, had it? Discovery for F-2 witnesses and treater deaths had closed. They were coming to court that day, or actually, yeah, that day. The motion had been noticed up for the day after, at which the court made the decision on it. That day they were coming to court to set the trial. F-3 expert discovery was complete. They were ready to set a trial date. Discovery was complete with all discovery complete in the case. The only thing left to do was set a trial date. It was at that point that they moved for leave to conduct the deposition of Dr. Dallager, despite the fact they had waived taking that deposition only months earlier before. And the only change between that time was the disclosure of their own expert, who they had every opportunity to talk to, before his deposition. Let me rephrase so I understand you. Was there an order cutting off discovery, a prior order that said discovery of expert witnesses or whatever, or a cut off on that date? The exact date was on January 25, 2013. F-2 discovery was closed. They waived taking the debt of Dr. Dallager. And when was that order in? I don't have the exact date for that order. Just going back to the issue of waiver of the introduction of the x-ray evidence, the cases that have been cited by the defendant in this are the Hudson case in particular is a criminal case. And the criminal standard, there's some dispute over what the standard is. In fact, there's disputed rulings within the circuits as to whether a motion to eliminate a post-trial motion is sufficient. But there's never been a civil court case that has upheld the idea that a motion to eliminate and then a post-trial motion is sufficient to preserve an evidentiary issue. We have the Taylor rule, isn't it, in criminal cases? But in a civil case, it's interrupted. Right. The Simmons case is what's controlling here, which came after Hudson. It's a 2002 case. And the Simmons case states that a motion to eliminate and a post-trial motion is simply not enough to preserve the issue. But moreover, in the end, the x-rays, as stated by the judge, didn't change the outcome in this case. The x-rays supported the chiropractor's diagnosis of subluxation. The defense was able to put on their own expert who had an opinion that it simply doesn't exist. X-rays don't help me because I don't believe in that diagnosis, so I don't do them in my practice. And I would normally look at the x-rays for potential herniated discs that were done in the ER, that this should have cleared up in four to six weeks. The whole issue of subluxation, they were able to address through their own expert who said, I don't even need to look at the x-rays because it doesn't exist. They were able to fully dispute the issues from the x-rays in the case. The jury just didn't buy it. And that's shown by the fact that the direct examination of Dr. Gallagher was 48 pages, and there was 94 pages of cross-examination of Dr. Gallagher. So if they were so surprised, they were certainly able to keep him on the stand for almost a whole day and question him about all of his opinions and records, which was really the main issue, how long she treated with him and the fact that he didn't continue to do additional exams to see if she was still injured. The x-rays were really a minor issue in the end, and that's what the judge stated her belief was. So she certainly applied the factors in seeing that it was her opinion. This didn't prejudice the defense. They were not surprised, and the admission should not call for a new trial. For those reasons, the court affirmed the ruling of the trial court denying the motion for a new trial. Any questions? Ms. Shimer, any rebuttal? Thank you. Let me ask you, so there was an order closing, a prior order that closed expert witness depositions or discovery? There was no prior order closing discovery, no. The order to which counsel is alluding is an order in which the judge had asked on the record, do you intend to take any F-2 depositions? I had said no, and the plaintiff prepared the order, and arguably I let the order get entered, but the plaintiff had prepared the order that the defendant had waived any right to depose any treating doctor. But there was no order closing discovery, and I made that clear in my motion for leave to depose Dr. DeLogger. In fact, I advised the trial court that myself and the trial counsel had spoken about a June trial date. I still anticipated being able to do a June trial date, that I would get the discovery deposition done within enough time. But no, there was no order closing discovery, nor had any trial dates been set at that time. We were showing up to set a trial date, and I fully anticipated that we'd be able to do that. The one question I didn't hear counsel... So you're saying that's the abuse of discretion? One of them. Because you had? Yeah. Okay. But that's the one you... never mind. Go ahead. The one question that Justice Holderidge asked that I didn't hear counsel answer was whether or not the plaintiff knew of the x-rays. That question wasn't addressed during the Appley's argument. And that's really what strikes at the heart of this, is that, as what I was trying to allude to, is that this comes up in personal injury litigations time and time again. It doesn't really matter the reason the plaintiff decided not to go obtain her own medical records, but it does matter that we have a policy that the drafters put in place when they enacted our rules of discovery that encouraged us to participate in good faith. And if the plaintiff makes the decision not to obtain the records, and to put that burden on the defendant to go and obtain the records for the plaintiff, then the plaintiff assumes the risk if not all of the records were produced. In this case, not all of the records were produced, and the defendant was ultimately surprised at trial that there were, in fact, x-ray films that actually didn't physically show up to trial despite a 237 notice to produce at trial. They didn't show up to trial until the morning of day two of the trial, moments before Dr. Dallagher took the stand into the case in chief. With regard to the cover sheet that Mr. Brandenburg was talking about for the subpoena, the part that he referred to that said call before any copying, so we're not all about x-rays, what's your understanding of what that does? My understanding is that that puts the doctor or the record keeper who is responding to the subpoena on notice that we're aware there's a charge involved with duplicating x-ray films, please call us. Because there might be one x-ray film, there might be 12 x-ray films. That makes a difference. So I think that it gives an indication that if there are x-ray films that aren't going to be produced, or if there are x-ray films that you're questioning, please give us a call so we can make the decision whether or not to duplicate them. Does that put, I think to follow up a little bit, does that put a burden to show that they exist? That in and of itself? Yes, I think it does, but I think that in correlation to the addendum to the subpoena, which you heard it read word for word, it listed everything that we could think of with the exception of the one word x-ray, or three words, x-ray film, two words? An x-ray report is usually a piece of paper that somebody, either a radiologist or sometimes a treater, if he does it there, and then usually you call them films, I think doctors call them radiographs, the actual film itself. But let me, you mentioned, and you said in your motion, that you made a tactical decision not to depose this treater, right? Correct. And that was based on what? That was based on the subpoena responses. And let me, correct me when I'm wrong, okay, and what you made that decision was saying if we depose this guy, he hasn't produced x-rays, if we go in and depose him, we're going to learn about the x-rays, and then we've got to deal with him, but if we don't depose him, then we'll be able to say he never produced them, and bar their use of trial. Sound right? No, it doesn't. Well, then what was the tactical decision involved in not deposing a person who treated the plaintiff 130-some time? In any case, in any personal injury case, the defendant only has those subpoena responses upon which to make that decision. In this particular case, those subpoena responses, it wasn't just about x-rays, those subpoena responses, those records essentially contained the same three or four words for 139 visits. So it was a tactical decision at that point of what I believed I could draw from Dr. DeLager on cross-examination concerning what, if anything, he had actually provided to this plaintiff. Don't you want to know what kind of witness he's going to make? And maybe it's just me. I'm having a hard time understanding not deposing this reader. It's a good point, Justice Smith. But I think the larger point is that the defendant has no obligation by law to go out and take a deposition or not take a deposition. However, if discovery responses are sent or a subpoena is sent, there are obligations that are involved to respond to those things. Well, then what about a motion to compel or a motion? You think, okay, I know you've got x-rays out there. The plaintiff told me you did. Judge, ahead of time, find this fellow in contempt or give him an order and say, now give us all your records or you're going to jail. Something like that. There's ways in discovery, that's what motions to compel are about, Supreme Court Rule 201K, and to kind of avoid this business where, and so what then you get is two lawyers, each one trying to blindside the other at trial by tactical decisions they made along the way. Well, two points in response to that, Judge. One, there's no obligation, there's no basis in the law that maintains that in order to exclude newly produced evidence that the party must have brought a motion to compel. I don't even know that a motion to compel would have been the proper avenue for the doctor, him being a non-party. But nonetheless, there's no basis in the law that says you have to bring a motion to compel. Secondly, what I think Justice Schmidt is overlooking, is that when the conflict occurs, when you've got a party who's saying, I think I had some x-rays, but then you subpoena the records and the records don't contain any mention of x-rays, and I think that's important, that there was nothing in those records to indicate an x-ray. But when you have that natural conflict, there's only one party who had opportunity and access to the doctor to find out what was going on, and there's only one party who intended to use those x-rays at length in their case in chief. That was the plaintiff. That's what's missing. It was then, that's why the Warrender Court factors are so important, because they give the trial court a mechanism to balance the inequities. Honestly, I don't think it really matters whether it was intentional or not intentional. The point is that the trial court had an opportunity to balance everything, and if the trial court had employed all of those factors as it was bound to do and not abuse its discretion, it would have found in favor of the defendant because the plaintiff had the opportunity to clarify this. The defendant did not. It was not the defendant's burden to go and find the medical evidence for the plaintiff. And with that, I would ask that this court remand the case for a new trial or alternatively remand the case for a trial on damages only with the instruction to exclude the x-ray films and the opinions regarding the x-rays. Thank you. Any questions? Thank you. We thank you both for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a quorum exchange.